## BOARD OF EDUCATION OF LYNCHBURG, Plaintiff-Appellant, v PENDLETON, ET, Defendants-Appellees.

Ohio Appeals, First District, Clinton County.

No. 154.  Decided June 10, 1947.

Smith & Kirk, Wilmington, for plaintiff-appellant.

Hayes & Hayes, Wilmington, and McBride & McBride, Hillsboro, for defendants-appellees.

## OPINION

By HILDEBRANT, J.

A suit to set aside the will of John Smithson resulted in a verdict and judgment sustaining the will. The appeal is here on questions of law.

The principal errors assigned run to the weight of the evidence, the refusal of the lower court to permit examination of the defendant Executor, as on cross-examination by the plaintiff, and the giving of defendants' special charge No. 7, and the refusal of plaintiff's special charge No. 3.

The court finds from a careful reading of the whole record ample evidence to sustain the verdict and the judgment, and that the same are not against the manifest weight of the evidence.

The right to call defendant Executor for cross-examination is based on §11497 GC, which reads in part: "At the instance of the adverse party, a party may be examined as if under cross-examination, either orally, or by deposition, like any other witness."

The Executor was made a party defendant in compliance with the provisions of §12080 GC, which are:

"All the devisees, legatees, and heirs of the testator, and other interested persons, including the executor or administrator, must be made parties to the action."

The question is, whether or not the Executor summoned into the action as a party defendant is an adverse party within the meaning of §11497 GC.

Plaintiff argues that the position of the Executor as a defendant in the caption, summoned as a party defendant in the case, coupled with the fact that the Executor here was the scrivener of the will, a witness thereto, and actively appearing at the trial as of defense counsel in the case, places him in the category of an adverse party. Cited in support of that contention is Chaney v Coulter, 29 O. C. A. 177, the first paragraph of the syllabus of which reads as follows:

"In an action to contest a will the scrivener may be called for cross-examination, where he is the executor under the will and is made by the issues raised to appear as an adverse party."

From a reading of that case it appears that the petition charged the defendant executor with the fraudulent creation of the will, concealment of its contents from testator, and either forging or fraudulently procuring the signature thereto, and contained a second cause of action seeking to enjoin certain acts of defendant as executor. A separate answer was filed by defendant executor so that the issues were raised by the pleadings, even though apparently the court made up the issue of the validity of the will for presentation to the jury in the statutory way. Upon that record the adversary position of the defendant executor clearly appeared.

Upon the record here at the time defendant Executor was called as on cross-examination, no act of his, either before, at,

or after the execution of the will was impugned or questioned, or made the subject of any allegation in the petition, nor did the subsequent proof develop any basis therefor.

It is stated in the first paragraph of the syllabus of **Vance v Davis, etc., 107 Oh St 577:**

"The parties to a cause are not determined solely by the caption in that cause, but from the entire record in the cause."

By analogy we conclude that the record here and not the caption determines the position of the parties, whether adversary or not, as well as who the parties are. In the case of **Wright v Schick, 134 Oh St 193,** the Supreme Court looked to the realities as revealed by the whole record in determining the relative position of the parties. See, also: **McCord v Mc-Cord, 104 Oh St 274,** wherein it is stated in the third paragraph of the syllabus:

"An executor named in a will is not 'united in interest' with the heirs and devisees, and an action to contest a will is not commenced as to the heirs of the testator and the devisees under the will by the issuance of a summons for the executor, though duly served upon him."

See, also, **Myers, Exrx., v Hogue, et al., 45 Oh Ap 330,** as bearing on this question.

Here too, plaintiff made the witness its own, so it may be said to have waived its prior claim and from the testimony elicited on direct and cross-examination it appears that no prejudicial error intervened. The right of defendant counsel to cross-examine the witness is not open to question, and argument of counsel thereon, complained about, is not a part of the record.

Defendants' special charge No. 7, given by the court, was:

"The fact that the defendant, Ira Pendleton, received substantial recognition in this will and the plaintiff received no portion of the property, is not of itself evidence of unsoundness of mind, or of undue influence. A person of full age and of sound mind and not under any restraint, may will his property to whomsoever he desires. You will not find this instrument not to be the last will and testament of John Smithson simply because you may think the provisions of the will just or unjust, reasonable or unreasonable; but you will consider

all its provisions, compare them with all the facts and circumstances with the sole purpose of determining whether or not at the time he made this will, he was of sound mind and not under any undue influence."

Objection is made to the above charge as having the effect of withdrawing the provisions of the will itself from consideration by the jury. In view of the specific instruction contained in the last sentence thereof to consider all the provisions of the will, the objection appears untenable.

The court refused to give plaintiff's special charge No. 3, as follows:

"If you find from the evidence that at the time of the execution of the will of John Smithson dated December 15, 1945, which leaves all of his estate to Ira Pendleton, he, Ira Pendleton was acting as the guardian of John Smithson, even though he may not have been formally appointed as such guardian by the Probate Court until a few days later, then in the eyes of the law a confidential or fiduciary relationship existed between the said John Smithson and Ira Pendleton which raises the presumption that such a will was the result of undue influence by Ira Pendleton on John Smithson and if this presumption is not rebutted by other evidence then your verdict shall be that the will of December 15, 1945 is not the last will and testament of John Smithson, deceased."

Plaintiff's claim of a presumption of undue influence arises out of the fact that defendant Pendleton was appointed Guardian of testator on December 18, 1945, three days after the will was made.

The record reveals that certain well-intentioned neighbors observing the testator and his aged sister with whom he lived, due to illness and the infirmities of age, were unable to properly feed and care for themselves in their home unaided, made application in the Probate Court of Clinton County for the appointment of a guardian for each of them as incompetents. On notice of such application, testator had defendant Pendleton take him to the Probate Court, where he protested to the Judge that he didn't need a Guardian and that there was nothing the matter with his mind. The Judge explained a Guardian could be appointed for physical disabilities alone, pointed out to him his failing eyesight and difficulty in walk-

ing, and that in such case, he might choose his own Guardian. Whereupon, he admitted his eye condition, and, as he expressed it, that he couldn't get around much, and requested the appointment of defendant Pendleton as Guardian. He then stated, referring to defendant, Pendleton: "While we have been sick they have been bringing meals down to us, they have been sitting up with us at night; and farming the land." He said, "When I am done with it I want them to have it all."

The Judge testified that in making the appointment, he did not consider or pass upon the mental condition of the testator.

Thereafter, testator requested defendant Pendleton to take him to Hillsboro, where the will was drawn in the office of McBride and McBride, who testified that all instructions were given by testator, and that defendant Pendleton, who was present, remained silent throughout.

The record shows defendant Pendleton was farming the Smithson land, was the nearest neighbor, and he and his family by force of these circumstances thrown closely in contact with the Smithsons, during which time they were called upon to and did perform many acts of neighborly kindness for their well-being.

Do the above facts justify the requested charge?

It is stated in **41 O. Jur. 485:**

"As a general rule, the mere existence of confidential relations between a testator and a beneficiary under his will does not raise a presumption that the beneficiary has exercised undue influence over the testator, and does not cast upon the beneficiary the burden of disproving undue influence.

In **Haley v Dempsey, Exr., 14 Oh Ap 326,** it is stated in the 5th paragraph of the syllabus:

"The so-called presumption of undue influence arising from confidential relations between testator and beneficiary is a mere inference of fact and not a presumption of law regarding which the court should charge the jury."

And at pages 331 to 333, speaking through Judge Shohl, this Court said:

"It is claimed that where a confidential relation is established and a gift made to a person in whom confidence is reposed, and such person participates in the drafting of the will,

or makes suggestions for drawing it, a presumption of fraud or undue influence arises which the proponent has the burden of proof to overthrow. The word 'presumption' is to some extent an ambiguous word, and many instances are found in the decisions in fraud cases, and in will contests, where it is used in more than one sense. Presumptions may be either of fact or of law. A presumption of law is a rule of law that a particular inference shall be drawn by a court or jury from a particular circumstance. A presumption of fact is a rule of law that a fact, otherwise doubtful, may be inferred from a fact which is proved. (Lawson on Presumptive Evidence (2 ed.), 639.) This distinction is adverted to in the case of Hutson v Hartley, 72 Oh St 262, 268, 269, 270.

"Under the Ohio law the order of probate is prima facie evidence of the due attestation, execution and validity of a will, and when the order of probate is introduced in evidence the burden of proof in respect to all of these subjects rests on the contestants of the will. Mears v Mears, 15 Oh St 90, and Hutson v Hartley, supra.

"In the further progress of the trial there is no such change in the burden of proof and law as to require the court in its charge to the jury to instruct them that in respect to any particular issue or items of evidence the burden of proof is thrown back from the contestants to the proponents.

"While it is argued here that the effect of a charge as now contended for does not affect the burden of proof, the effect of such a charge would be to require the court to instruct contradictory presumptions in respect to the same subject-matter at the same time. Hutson v Hartley, 72 Oh St 262, 268.

"The so-called presumption of undue influence arising out of confidential relations is neither a conclusive presumption nor a presumption of law. It is a mere inference of fact which the jury may draw.

"'While the jury may find undue influence as a fact from the fact that a beneficiary in confidential relations with testator drew the will, the court must not charge the jury as a matter of law so to find.' Page on Wills, Section 414, page 492.

"See also Hall, etc., v Hall, 78 Oh St 415, at page 416, where the supreme court held that the trial court erred in giving a charge which in substance told the jury what weight they should give to a particular item of evidence of facts which constituted a confidential relation. See also the discussion in the decision (not the syllabus) in Graham v Courtright, 180 Ia., 394, 405-416.

"It is for the jury to determine what inferences of fact

are properly to be drawn from the evidence adduced at the trial."

In Page on Wills, Vol. 2, page 622, it is stated:

"The so-called presumptions of undue influence which arise out of certain classes of confidential relations between the testator and the beneficiary, and in some jurisdictions, in connection with additional facts, are presumptions or inferences of fact, in most jurisdictions, and not presumptions of law. It is, therefore, not necessary and not proper to charge the jury that they must find undue influence unless the proponent has introduced evidence sufficient to rebut the presumption."

Without extended comment or citation, may we point out that where the confidential relationship of Guardian and ward is predicated on physical as distinguished from mental disability, the implications with reference to undue influence are vastly different. It has been held that the presumption arising would be exactly opposite to one of undue influence.

In harmony with the above authorities, we find no error in refusing to give the requested charge No. 3.

While fraud was argued to the Court we find no evidence whatever in the record to substantiate such a charge, nor any error in the record, prejudicial to appellants.

The judgment is affirmed.

MATTHEWS, PJ, ROSS and HILDEBRANT, JJ, concur in Syllabus, Opinion and Judgment.